IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.	NO. 3:20-CR-39
(NO. 3:23-CV-25)

XAVERIANA COOK

**OPINION AND ORDER**

Claiming ineffective assistance of trial counsel, Xaveriana Cook moves pro se to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Because there is no merit to Cook's ineffective assistance of counsel claims, § 2255 relief will be denied.

**I**
**§ 2255**

Under 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a)." A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Fed. Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted).

**II**
**Background**

Around the first of May 2020, Hunter Carlstrom told his romantic partner Xaveriana Cook that he intended to kill a local drug dealer, J.S., "and steal his money, firearms, and drugs." Doc. #101 at 5. On May 4, 2020, Carlstrom murdered J.S. and then robbed him of his illegal drugs,

drug proceeds, and firearms. *Id*.

Following J.S.'s murder, Cook and Carlstrom drove in Cook's car to the residence of Andrew Capps, Carlstrom's acquaintance. *Id.* at 5. Cook was present when Carlstrom instructed Capps to burn J.S.'s residence to destroy any evidence of his murder and gave Capps two firearms, illegal drugs, and money. *Id.* Cook and Carlstrom then traveled in Cook's car from Arkansas where they resided to Tennessee and stayed two nights in a hotel room. *Id.* at 6. The pair traveled back to Arkansas and then to Vardaman, Mississippi, and stayed with acquaintances from May 7–15, 2020. *Id.* During their travels from Arkansas to Tennessee, and from Tennessee back to Arkansas and then to Mississippi, Cook and Carlstrom possessed and transported firearms. *Id.*

On May 14, 2020, Carlstrom, using money he had stolen from J.S., purchased an engagement ring for Cook and the two went to Van Atkins Jewelers on the town square in Oxford, Mississippi, to drop off the ring to have it resized. *Id.* The next day, as Cook was driving with Carlstrom to the jewelry store to retrieve the ring, law enforcement conducted a traffic stop and Cook complied with their instructions to exit the vehicle. *Id.* at 6–7. Carlstrom failed to comply with the officers' directive to show his hands and shot United States Deputy Marshal Robert Dickerson. *Id.* at 7. Other officers shot Carlstrom and he died on the scene. *Id.* Deputy Marshal Dickerson was taken immediately to the hospital for emergency surgery and has since recovered from his injuries. *Id.*

On May 16, 2020, the Federal Bureau of Investigation filed a criminal complaint charging Xaveriana Cook with transporting stolen firearms; possessing stolen firearms; and aiding and abetting the attempt to kill an officer of the United States while such officer was engaged in the performance of official duties. Doc. #1. Two days later, the Federal Public Defender was appointed to represent Cook. Doc. #7. Pursuant to that appointment, Assistant Federal Public

2

Defender Gregory S. Park entered an appearance as counsel for Cook on May 19, 2020. Doc. #9.

On August 19, 2020, a federal grand jury indicted Cook on five counts: (1) accessory after the fact in a Hobbs Act Robbery (Count One); (2) aiding and abetting the transportation of stolen firearms (Count Two); (3) aiding and abetting the possession of stolen firearms (Count Three); (4) aiding and abetting the possession of a firearm by a prohibited person (Count Four); and (5) aiding and abetting the attempted murder of a federal officer (Count Five). Doc. #45 at 4–7. Cook waived arraignment and entered a plea of not guilty to all charges in the indictment. Doc. #47.

On August 2, 2021, pursuant to a written plea agreement with the government, Cook pled guilty to Counts One and Four of the Indictment at a change-of-plea hearing before United States Senior District Judge Neal B. Biggers. Doc. #69. During the hearing, in response to questions posed to her by Judge Biggers, Cook confirmed that she was satisfied with her attorney, that she understood the charges in the Indictment and the consequences of entering a guilty plea, and that she had spoken with her attorney about the Indictment and any possible defenses. Doc. #72 at 4–6. Cook also responded affirmatively that she understood the terms of the plea agreement, that the government's statement of the relevant facts was correct,[1] and that she committed the criminal acts charged in the Indictment. *Id.* at 8–16. Further, Cook accurately recounted the maximum possible penalties for both Counts One and Four. *Id.* at 17–18. After accepting Cook's guilty pleas and the plea agreement, Judge Biggers ordered the preparation of a presentence report. Doc. #70.

---

[1] Cook answered "Yes, sir" in response to the question, "you heard [the prosecutor] describe that evidence. Did you do everything that he just said you did?" Doc. #72 at 16. When asked if there was "[a]nything [the prosecutor] said that you did that you disagree with," Cook's counsel clarified:

Your Honor, the only one thing was that the factual basis makes it sound like Ms. Cook was in the car as the taser was deployed. And she was already out of the car and on the ground when Mr. [Carlstrom] showed the gun, and the taser was fired. And then the shootout came after the fact. But she was not in the car at the time. That's the only thing, I believe, she disagrees with.

*Id.* at 16. Cook confirmed her counsel's statement was correct. *Id.*

3

On November 30, 2021, Cook, through her counsel, filed objections to the presentence report, challenging various factual statements and the offense calculation for her role as a "minor participant" in the acts committed by Carlstrom. Doc. #76 at 1, 4. The government responded to Cook's objections on December 6, 2021. Doc. #81.

On January 4, 2022, Cook's counsel filed on her behalf a nine-page sentencing memorandum which thoroughly detailed Cook's mental health, family history, and substance abuse. Doc. #87. Cook's counsel also hired a forensic psychological expert, Dr. Alexander J. Paret, who performed a "Forensic Neuropsychological Evaluation" of Cook which was included as an exhibit to Cook's sentencing memorandum. Doc. #87-3. Cook further submitted six reference letters written by her family and friends. Doc. #86.

On February 7, 2022, Cook appeared before Judge Biggers for sentencing. Doc. #98. Relying on the presentence report, Judge Biggers overruled all Cook's unresolved objections to the presentence report. Doc. #102 at 1. Cook's guidelines sentence, which was calculated based on Cook receiving a full three-point reduction for her acceptance of responsibility, included two hundred and forty months of imprisonment.[2] Doc. #101 at 13, 17. However, Judge Biggers sentenced Cook to concurrent terms of eighty-four months of imprisonment on each count, followed by concurrent terms of three years of supervised release on each count, and entered judgment accordingly.[3] Doc. #103 at 2–3. Cook did not appeal the judgment.[4] Doc. #107 at 8.

On February 9, 2023, Cook timely filed a pro se motion to vacate, set aside, or correct her

---

[2] "Based upon a total offense level of 42 and a criminal history category of I, the guideline imprisonment range is 360 months to life. However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 240 months." Doc. #101 at 17.

[3] The remaining counts against Cook in the Indictment were dismissed on the government's motion. Doc. #103 at 1.

[4] When a defendant has been convicted and exhausted or waived any right to appeal, a court "is entitled to presume that [she] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted).

4

sentence pursuant to 28 U.S.C. § 2255 contending that her counsel rendered ineffective assistance of counsel. Doc. #107. The government responded in opposition on May 17, 2023. Doc. #112. After being granted an extension, Cook replied on July 18, 2023. Doc. #114, #116. On August 14, 2023, this case was randomly reassigned to the undersigned. Doc. #117.

## III
## Discussion

Cook argues her trial counsel was ineffective for failing to (1) "promptly resolve the proceedings with a plea of guilty;" (2) file pretrial motions objecting to the custodial questioning of her; (3) offer evidence of her "substance dependence and history of mental illness;" and (4) "investigate the evidence presented … by the government or … object to the government's prejudicial statements." Doc. #107 at 5, 6, 8, 9. The government responds that "Cook fails to assert a viable ineffective assistance of counsel claim because she merely asserts unsupported, vague, and conclusory allegations of inadequacy and prejudice." Doc. #112 at 7. Cook's reply emphasizes her original arguments. Doc. #116 at 3–5.[5]

> To succeed on [an] ineffective assistance claim, [a petitioner] must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and that (2) there is a reasonable probability that prejudice resulted. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. So mere disagreement about tactics does not amount to a constitutional infirmity.

*United States v. Allen*, 918 F.3d 457, 460–61 (5th Cir. 2019) (cleaned up). Absent an affirmative showing of prejudice, there is no merit to a claim of ineffective assistance of counsel. *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) ("If the petitioner fails to prove the prejudice

---

[5] To the extent Cook's reply also raises new argument, the Court declines to consider such as raised for the first time in her reply. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.") (citation omitted).

5

component, the court need not address the question of counsel's performance.") (citation omitted). "[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel." *Milam v. Davis*, 733 F. App'x 781, 787 (5th Cir. 2018) (quoting *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (citation removed)).

### A. Guilty Plea

Cook contends that her "[d]efense counsel failed to promptly resolve the proceedings with a plea of guilty." Doc. #108 at 4. The government responds that "Cook cannot meet her burden of showing that her counsel inadequately performed because she merely presents unsupported allegations that her counsel misadvised her, while the record shows the opposite." Doc. #112 at 10.

The criminal proceedings against Cook were resolved by her pleading guilty to Counts One and Four pursuant to a written plea agreement with the government, which Judge Biggers accepted on August 2, 2021. Doc. #69. The calculation of Cook's offense level included a full three-level decrease based on her acceptance of responsibility. Doc. #101 at 13. Cook's counsel clearly assisted her in reaching a guilty plea through negotiations with the government.

To the extent Cook takes issue with the delay of time between her indictment and guilty plea, *see* Doc. #108 at 4–7, she fails to identify what specific actions or inactions of her counsel caused the delay or how that delay prejudiced the outcome of her case. While Cook primarily cites statistics regarding trial convictions and acquittals in this district and references various authorities regarding the benefits of pleas, *see* Doc. #108 at 5–6, "[r]aw statistics are rarely probative of anything. To be meaningful, further refinement (if not always expert analysis) is required." *Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010); *see United States v. Anderson*, No. cr-12-1606-1, 2020 WL 5627172, at *23 (D. Ariz. June 25, 2020) ("General statistics cannot

predict the outcome of any particular case, and knowledge of national or even district statistics regarding jury verdicts in federal criminal cases is not a prerequisite to effective assistance."). Regardless of when she pled guilty, Cook has not shown the outcome of her case would have been different or that she was prejudiced by the timing of her guilty plea. Consequently, Cook has failed to establish deficient performance by her counsel in that regard. *See United States v. Pontefract*, No. 2:08-cr-69-1, 2014 WL 5365362, at *3 (W.D. La. Oct. 20, 2014) (to succeed on ineffective assistance of counsel claim, "the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

### B. Custodial Questioning

Cook argues her counsel's performance was inadequate "for failing to file a motion to object to the questioning of [her] by police immediately after she was an unwilling witness to her captor, Hunter Carlstrom, being killed by police officers while she hugged the ground in fear of her life."[6] Doc. #108 at 8. The government responds that "[i]t is undisputed that Cook, after being read her Miranda rights, waived her rights and agreed to speak with the officers." Doc. #112 at 11.

"A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceeding leading to conviction." *United States v. Cothran*, 302 F.3d 279, 285–86 (5th Cir. 2002) (citing *United States v. Smallwood*, 920 F.3d 1231, 1240 (5th Cir. 1991)). "A guilty plea also eliminates objections to searches and seizures that violate the Fourth Amendment." *Id.* at 286 (citing *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999); *Franklin v United States*, 589 F.2d 192, 194–95 (5th Cir. 1979)). Cook does not (and cannot) dispute that,

---

[6] According to Cook, law enforcement questioned her on and off for days following the gunfire between Carlstrom and the authorities while she "was still in a state of severe shock and fear, and unable to competently look out for her own interests or exhibit the mental or emotional capacity to do so … by exercising her constitutional rights to remain silent." Doc. #108 at 8.

7

after being read her *Miranda* rights,[7] she waived such rights and agreed to answer questions posed by law enforcement. *See* Doc. #72 at 15–16. And at her change-of-plea hearing, Cook admitted to the conduct contained in her confession during the custodial questioning and further admitted to providing the confession to the officers. *Id.* at 16. Given this, Cook's counsel was not obligated to object to the custodial questioning and her resulting confession. *See Cothran*, 302 F.3d at 286 ("The plea waives claims of governmental misconduct."). Her counsel also did not need to file futile pretrial motions. *Robison v. Johnson*, 151 F.3d 256, 261 (5th Cir. 1998) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)). In short, Cook fails to demonstrate that her counsel's lack of objection constituted deficient performance and certainly fails to show how any such objection would have changed the outcome of the proceedings.

### C. Substance Abuse and Mental Illness

Cook argues her counsel "knew that [she] often acted in ways that showed that she was not mentally stable" and that "the extent of [her] drug addiction was not developed or emphasized by defense counsel, and as a result, was not fully incorporated into [her presentence report]," which "deprived [her] of the right to be designated by the Court as a drug and alcohol abuser." Doc. #108 at 9–10. The government responds that Cook's arguments are meritless because Cook's "counsel filed a 7-page document with three detailed objections to the PSR, including objections regarding Cook's mental health and substance abuse." Doc. #112 at 10 (citing Doc. #76 at 5).

The Fifth Circuit views evidence of substance abuse and mental illness as "double-edged" and has often deferred to counsel's strategic decision whether to introduce this type of evidence. *See Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) ("As for the alcohol and drug abuse, this Court has repeatedly denied claims of ineffective assistance of counsel for failure to present

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

'double edged' evidence where counsel has made an informed decision not to present it.") (citation omitted); *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994) (noting heavy deference owed trial counsel when deciding strategically to forego admitting evidence of a "double edged nature" which might ultimately harm a defendant's case).

The sentencing memorandum Cook's counsel filed on her behalf delved into the physical abuse Cook suffered at Carlstrom's hands. Doc. #76 at 5. Her counsel also engaged an expert, Dr. Alexander Paret, a clinical and forensic medical psychologist to evaluate Cook, the results of which was a sixty-nine page report detailing his assessment of Cook's mental health. Doc. #87-3. Paret also testified about his evaluation of Cook at Cook's sentencing hearing. Doc. #105 at 2, 66–103. More, the PSR reviewed and relied on by the Court not only contained sections addressing Cook's mental and emotional health as well as her substance abuse but references Dr. Paret's diagnosis. Doc. #101 at 15–16. Not only is deference given to Cook's counsel's decision to offer evidence related to Cook's mental status and substance abuse but the record wholly negates Cook's arguments that such evidence was not developed by her counsel. Cook has not demonstrated deficient performance by her counsel or prejudice to her case.

### D. Investigation and Alleged Prejudicial Statements

Cook argues her counsel "never reviewed the pertinent facts in sufficient detail to reach the obvious conclusion that [her] case was unwinnable at trial" and that "the highly prejudicial remarks made by the prosecution and accepted into evidence implying that Carlstrom had shot the officer clearly adversely infected the proceedings with prejudicial falsehoods." Doc. #108 at 10, 12. The government responds that Cook "cannot show that her sentence would have been different but for the alleged errors" and that her "assertions are unsupported by citation to the record, any affidavit, or any other source." Doc. #112 at 12, 13.

9

"[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Harper v. Lumpkin*, 64 F.4th 684, 691 (5th Cir. 2023) (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)); *see United States v. Daniels*, 12 F.Supp.2d 568, 575 (N.D. Tex. 1998) ("conclusory allegations cannot serve as the basis for a claim of ineffective assistance of counsel" in a § 2255 proceeding). Cook offers nothing to support her claim that her counsel failed to investigate her case or object to alleged prejudicial statements by the government. Indeed, Cook spends most of her time discussing alleged facts related to the gunfire between Carlstrom and authorities. Doc. #108 at 11–12. But Cook was not charged in relation to the shooting of the deputy marshal. Rather, the charges against Cook, to which she pled guilty, stemmed only from Carlstrom's Hobbs Act robbery and murder of J.S. *See* Doc. #67. Cook again offers no substantive argument as to what acts or omissions by her attorney amounted to deficient performance and does not specify any resulting prejudice. Her claim of ineffective assistance of counsel thus fails. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

### E. Evidentiary Hearing

Cook requests an "immediate evidentiary hearing" on her motion. Doc. #108 at 14. The government responds that "[a]n evidentiary hearing is unnecessary because Cook has failed to state a viable claim in her § 2255 Petition." Doc. #112 at 5.

"A § 2255 motion requires an evidentiary hearing unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *Allen*, 918 F.3d at 460 (citations omitted). "Conclusory allegations, unsubstantiated by evidence, do not support a

10

request for an evidentiary hearing. A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents independent indicia of the likely merit of his allegations." *United States v. Saldivar*, 811 F. App'x 264, 265 (5th Cir. 2020) (cleaned up) (quoting *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013)); *see* 28 U.S.C. § 2255(b); *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) ("If there is no 'independent indicia of the likely merit' of the allegations made in the motion, a hearing is not required.") (citation omitted).

Here, because the bases for Cook's request for § 2255 relief are all without merit, a hearing on her motion is not necessary.

## IV
## Certificate of Appealability

When considering a § 2255 motion, a court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Proceedings. A court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For a case rejected on its merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to certificate of appealability determination in § 2255 proceeding). To obtain a certificate of appealability on a claim that has been rejected on procedural grounds, a movant must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Based on the *Slack* criteria, the Court concludes a certificate of appealability should not issue in this case.

11

## V
## Conclusion

Cook's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 [107] is **DENIED**.  A certificate of appealability is **DENIED**.

**SO ORDERED**, this 14th day of November, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**